UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED FIRE AND CASUALTY COMPANY, an Iowa Corporation ) ) ) Plaintiff, ) ) v. ) ) ) BARTLETT BITUMINOUS ASPHALT, ) LLC, an Illinois Corporation; ) ROSANNA CONSOLE, an Illinois ) citizen; PETER T. CONSOLE, an ) Illinois citizen; ANTHONY P. ) CONSOLE, an Illinois citizen; ) DONATO P. CONSOLE, an Illinois ) citizen; and NICOLE A. CONSOLE, ) an Illinois citizen, ) ) Defendants. ) | Case No. 06 C 996 Magistrate Judge Geraldine Soat Brown |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."). [Dkt 41.] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt 15, 17.] Defendants have failed to file a response or otherwise oppose Plaintiff's Motion. Plaintiff's Motion for Summary Judgment is granted. This Opinion sets out the reasons for the court's decision.

**JURISDICTION**

Federal jurisdiction in this case is premised on diversity of citizenship. 28 U.S.C. § 1332. Plaintiff United Fire and Casualty Company ("United Fire") is an Iowa corporation with its principal

1

place of business in Cedar Rapids, Iowa. (Compl. ¶ 1) [Dkt 1.] Individual defendants Rosanna Console, Peter Console, Anthony Console, Donato Console, and Nicole Console are all citizens of Illinois. (Pl.'s Supp. of Rec. on Citizenship ¶¶ 2, 4.) [Dkt 58.] Defendant Bartlett Bituminous Asphalt, LLC ("BBA") is a limited liability company. (*Id*. ¶ 2.) BBA's members are the named individual defendants, Rosanna Console, Peter Console, Anthony Console, Donato Console, and Nicole Console, who are all citizens of Illinois. (*Id*.) The parties do not dispute that the amount in controversy exceeds $75,000. (Ans. ¶ 8.) [Dkt 21.]

## STATEMENT OF FACTS[1]

A. <u>BBA's Construction Contracts</u>

In 2004, BBA was retained by the Illinois Department of Transportation ("IDOT") to perform highway and airport improvement and construction at various locations throughout the greater Chicago area. (Pl.'s LR State. ¶¶ 2, 6, 8, 10, 12.) Specifically, BBA entered into five distinct contracts with IDOT for improvement and construction projects related to Highland Avenue (the "Highland Avenue Project"), Route 22 (the "Route 22 Project"), Oak Park (the "Oak Park Project"), Fullerton Avenue (the "Fullerton Avenue Project"), and the DuPage Municipal Airport (the "DuPage Airport Project"). (*Id*.) BBA also entered into contracts with the Joliet Regional Port District for

---

[1] Defendants failed to respond to United Fire's Motion or its Local Rule 56.1(a) Statement of Uncontested Facts. Statements not responded to or not controverted by specific references to the record are deemed admitted. L.R. 56.1(b)(3). The facts set forth in this opinion are, therefore, undisputed and are taken from United Fire's Local Rule 56.1(a) Statement of Uncontested Facts, which is cited herein as: "Pl.'s LR State. ¶ __", from the exhibits submitted with that statement, which are cited herein as: "Pl.'s LR Ex. __" [dkt 43], and from the Affidavit of Steven C. Watters ("Watters Aff.") submitted by United Fire in further support of its Motion [dkt 44].

construction at Lewis Airport (the "Lewis Airport Project"), and the Village of South Barrington for construction related to the widening of Barrington Road (the "Barrington Road Project"). (*Id*. ¶¶ 4, 14.)

B.    Surety Bonds

As a condition of these seven contracts, BBA was required to furnish surety bonds guaranteeing BBA's obligations to perform work and pay for labor and materials necessary for completion of the improvement and constructions projects. (*Id*. ¶¶ 3, 5, 7, 9, 11, 13, 15.)  At the request of BBA, United Fire issued the following seven bonds identifying BBA as principal:  (1) for the Highland Avenue Project, a bond in favor of the State of Illinois for the penal sum of $3,482,322.75 (Pl.'s LR State. ¶ 3; Pl.'s LR Ex. A); (2) for the Lewis Airport Project, a bond in favor of the Joliet Regional Port District through its agent IDOT-Division of Aeronautics for the penal sum of $798,362.50 (Pl.'s LR State. ¶ 5; Pl.'s LR Ex. B); (3) for the Route 22 Project, a bond in favor of the State of Illinois for the penal sum of $4,171,427.92  (Pl.'s LR State. ¶ 7; Pl.'s LR Ex. C); (4) for the Oak Park Project, a bond in favor of the State of Illinois for the penal sum of $1,437,128.53 (Pl.'s LR State. ¶ 9; Pl.'s LR Ex. D); (5) for the Fullerton Avenue Project, a bond in favor of the State of Illinois for the penal sum of $3,286,736.09 (Pl.'s LR State. ¶ 11; Pl.'s LR Ex. E); (6) for the DuPage Airport Project, a bond in favor of the DuPage Airport Authority through its agent IDOT for the penal sum of $2,785,345.05 (Pl.'s LR State. ¶ 13; Pl.'s LR Ex. F); and (7) for the Barrington Road Project, a bond in favor of the Village of South Barrington for the penal sum of $315,757.24 (Pl.'s LR State. ¶ 15; Pl.'s LR Ex. G).

In addition to the foregoing payment and performance bonds, United Fire entered into two

wage and welfare bonds with BBA as principal in favor of two labor unions for the penal sum of $10,000 each. (Pl.'s LR State. ¶ 50; Pl.'s LR Ex. I.)

C.  Indemnification Agreement

In consideration for United Fire's issuance of the foregoing bonds, on or about December 11, 2003, United Fire, as Surety, BBA, as Contractor, and defendants Peter T. Console, Anthony P. Console, Donato P. Console, Nicole A. Console, and Rosanna Console, as Indemnitors, entered into an Agreement of Indemnity ("Indemnity Agreement") whereby BBA and the Indemnitors (hereinafter collectively referred to as "Defendants"), jointly and severally, agreed to indemnify and hold United Fire harmless from any losses, expenses, costs and attorneys' fees incurred by United Fire as a consequence of issuing bonds on behalf of BBA. (Pl.'s LR State. ¶ 16; Pl.'s LR Ex. H, INDEMNITY SECOND.) The Indemnity Agreement was executed by Defendants Peter T. Console, Anthony P. Console, Donato P. Console, and Nicole A. Console in their individual capacity, and Rosanna Console, as managing member of BBA and in her individual capacity. (Pl.'s LR Ex. H.)

Specifically, the Indemnity Agreement states:

> INDEMNITY SECOND: The Contractor and the Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (*including, but not limited to, interest, court costs and counsel fees*) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement, or (3) in enforcing any of the covenants and conditions of this Agreement.

(Pl.'s LR State. ¶ 16; Pl.'s LR Ex. H, INDEMNITY SECOND (emphasis added).) The Indemnity Agreement also states:

> TAKEOVER SIXTH: In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Contractor has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith . . . the Surety shall have the right, at its option and in its sole discretion . . . to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

(Pl.'s LR State. ¶ 16; Pl.'s LR Ex. H, TAKEOVER SIXTH.)

In the event of any payment by the Surety, the Contractor and Indemnitors further agree that in any accounting between the parties, "the Surety shall be entitled to charge for any and all disbursements made by it in good faith . . . under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety." (Pl.'s LR Ex. H, INDEMNITY SECOND.)

D.     <u>BBA's Default and United Fire's Bond Losses</u>

In May 2005, IDOT declared BBA in default of all seven of the improvement and construction contracts, terminated BBA from all of its contractual obligations, and demanded that United Fire fulfill its payment and performance obligations. (Pl.'s LR State. ¶¶ 17, 18, 22, 23, 27, 28, 32, 33, 37, 38, 42, 43, 47, 48.)

To fulfill its performance obligations with respect to the Highland Avenue Project, United Fire procured a completion contractor to finish the remaining work at a cost of $241,305.37. (Pl's LR State. ¶ 19; Watters Aff. ¶ 3.) United Fire also received payment bond claims and lawsuits from

5

several subcontractors, suppliers, laborers and claimants for material and labor supplied to the Highland Avenue Project, for which United Fire has incurred $1,535,881.21 in payment bond losses. (Pl's LR State. ¶¶ 20, 21; Watters Aff. ¶¶ 4, 5.)

To fulfill its performance obligations with respect to the Lewis Airport Project, United Fire procured completion subcontractors to finish the remaining work at a cost of $33,795.00. (Pl's LR State. ¶ 24; Watters Aff. ¶ 8.) United Fire also received payment bond claims and lawsuits from several subcontractors, suppliers and laborers for material and labor supplied to the Lewis Airport Project, totaling $75,234.48 in payment bond losses. (Pl's LR State. ¶¶ 25, 26; Watters Aff. ¶¶ 9, 10.)

Pursuant to its performance obligations in connection with the Route 22 Project, United Fire procured a completion contractor to finish the remaining work at a cost of $1,034,282.15. (Pl's LR State. ¶ 29; Watters Aff. ¶ 13.) In addition, United Fire received payment bond claims and lawsuits from subcontractors, suppliers and laborers for material and labor supplied to the Route 22 Project, totaling $867,054.01 in payment bond losses. (Pl's LR State. ¶¶ 30, 31; Watters Aff. ¶¶ 14, 15.)

To fulfill its performance obligations with respect to the Fullerton Avenue Project, United Fire procured a completion contractor to finish the remaining work and entered into a takeover agreement with IDOT. (Pl's LR State. ¶ 34.) United Fire incurred a loss in the amount of $559,428.21 in satisfying its performance bond obligations. (Pl's LR State. ¶ 34; Watters Aff. ¶ 18.) United Fire also received payment bond claims and lawsuits from subcontractors, suppliers and laborers for material and labor supplied to the Fullerton Avenue Project, totaling $124,624.83 in payment bond losses. (Pl's LR State. ¶¶ 35, 36; Watters Aff. ¶¶ 19, 20.)

Pursuant to its performance obligations in connection with the Barrington Road Project,

United Fire procured a completion contractor to finish the remaining work at a cost of $81,068.80. (Pl's LR State. ¶ 39; Watters Aff. ¶ 23.) In addition, United Fire received payment bond claims and lawsuits from subcontractors, suppliers and laborers for material and labor supplied to the Barrington Road Project, totaling $89,795.29 in payment bond losses. (Pl's LR State. ¶¶ 40, 41; Watters Aff. ¶¶ 24, 25.)

To fulfill its performance obligations for the Oak Park Project, United Fire incurred a loss in the amount of $593,106.80. (Pl's LR State. ¶44; Watters Aff. ¶ 28.) United Fire also received payment bond claims and lawsuits from subcontractors, suppliers and laborers for material and labor supplied to the Oak Park Project, totaling $10,032.50 in payment bond losses. (Pl's LR State. ¶¶ 45, 46; Watters Aff. ¶¶ 29, 30.)

Finally, in satisfying its performance obligations for the DuPage Airport Project, United Fire procured a completion contractor to finish the remaining work at a cost of $327,663.45. (Pl's LR State. ¶ 49; Watters Aff. ¶ 33.)

In addition to the foregoing payment and performance bond losses, totaling $5,573,272.10, United Fire incurred $37,433 to cover the wages of five BBA employees (Pl's LR State. ¶ 50; Watters Aff. ¶ 34), and $20,000 to cover claims made by the unions pursuant to the two wage and welfare bonds United Fire issued. (*Id*.; Pl.'s LR Ex. I.)

United Fire notified BBA and the Indemnitors of their obligations under the Indemnity Agreement. (Pl's LR State. ¶ 51.) To date, BBA and the Indemnitors have refused or failed to post collateral and indemnify United Fire all losses, costs and expenses incurred pursuant to the surety bonds. (*Id*.) Despite United Fire's request, BBA and the Indemnitors have also refused or failed to provide United Fire with any timely information such as the unpaid payment bond claimants. (*Id*.

7

¶¶ 20, 25, 30, 35, 40, 45.)

In total, as of June 30, 2007, United Fire has sustained $5,962, 273.83 in losses in fulfilling its obligations under the bonds it issued on BBA's behalf. (Pl's LR State. ¶ 53; Watters Aff. ¶36.)

E.   United Fire's Lawsuit

United Fire filed this action to recover the amounts it has already paid in fulfilling its obligations under the bonds and in enforcing its rights under the Indemnity Agreement. In addition, United Fire asserts that BBA is liable for expenses it incurred in connection with the investigation and resolution of the bond claims and lawsuits. Specifically, to assist with its investigation, United Fire retained the consulting services of JBS Services and Bowers Consulting, the accounting services of Ron Boyle, CPA, and the legal services of Leo & Weber, PC. (Pl's LR State. ¶ 52; Watters Aff. ¶36.) As of September 2007, United Fire has incurred a total of $226,014.03 in attorney fees and a total of $124,077.06 in consulting and accounting fees.[2] (*Id*.)

United Fire has moved for summary judgment, arguing that the undisputed facts establish that Defendants voluntarily entered into the Indemnity Agreement in exchange for United Fire's issuance of payment and performance bonds. (Pl.'s Mot. for Summ. Judg. at 5.) United Fire also argues that it has incurred losses and expenses in investigating and resolving claims asserted against the bonds and in enforcing the Indemnity Agreement, and that Defendants have failed or refused to indemnify United Fire in accordance with the Indemnity Agreement. (*Id*. at 5-6) United Fire seeks

---

[2] United Fire's Motion seeks reimbursement for $207,491.67 in attorney fees. (Pl's LR State. ¶ 52; Watters Aff. ¶36.) In its Reply in Support of its Motion for Summary Judgment ("Reply") [dkt 53], United Fire states that it has incurred an additional $18,522.36 in attorneys' fees and expenses since the filing of its Motion and supplements the original affidavit of Steven Watters as support. (Reply at 3; Suppl. Watters Aff. ¶ 1.)

an order granting judgment against each of the defendants, jointly and severally, in the amount of $5,980,796.19, preserving its right to pursue any losses and expenses incurred after June 30, 2007; and granting United Fire the costs of this action. (Pl.'s Mot. for Summ. Judg. at 1.)[3]

BBA failed to file any response to United Fire's motion in spite of being granted two extensions of time to do so. [Dkt 47, 50.] United Fire's Motion is, therefore, unopposed.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial only if, after viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must then set forth specific facts to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); *Celotex,* 477 U.S. at 324. If the non-movant does not so respond, "summary judgment should, if appropriate, be entered" against the non-moving party. Fed. R. Civ. P. 56(e).

The Local Rules for the United States District Court for the Northern District of Illinois

---

[3] United Fire sought $5,962,273.83 in its motion for summary judgment, and updated its loss figures in its reply brief and the accompanying affidavit to $5,980,796.19. This sum includes losses and expenses incurred as of June 30, 2007, and attorneys' fees, consulting fees and accounting fees through September 2007. (Pl's LR State. ¶ 52; Watters Aff. ¶36; Reply at 3; Suppl. Watters Aff. ¶ 1.)

further delineate the parties' respective procedural obligations with each motion for summary judgment filed pursuant to Fed. R. Civ. P. 56. The moving party must supplement its motion papers and supporting memorandum with a statement of undisputed material facts. L.R. 56.1. The non-moving party must then supplement its response to the motion with a concise response to each numbered paragraph of the moving party's statement and a statement of any additional facts that require denial of summary judgment. *Id.* at 56.1(b)(3). If the non-moving party fails to file a responsive statement, the court will treat the non-moving party's failure to contest the moving party's Local Rule 56.1 statement of uncontested facts as an admission of those facts. Local Rule 56.1(b)(3)(C); s*ee also Smith v. Severn*, 129 F.3d 419, 425-26 (7th Cir. 1997)*; Midwest Imports Ltd. v. Coval,* 71 F.3d 1311, 1313 (7th Cir.1995).

Defendants have failed to file a response to United Fire's Motion or Local Rule 56.1 statement and are, therefore, deemed to have admitted the facts contained in United Fire's Local Rule 56.1(a) statement. As a result, this court must determine whether summary judgment is proper as a matter of law by reviewing the record and the facts as presented by United Fire. *See Wienco, Inc. v. Katahn Associates, Inc.,* 965 F.2d 565, 568 (7th Cir.1992). United Fire must nevertheless sustain its burden of proof in demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as matter of law. Fed. R. Civ. P. 56(e); *see Wienco,* 965 F.2d at 568.

## DISCUSSION

In Illinois, an indemnity agreement is a contract and therefore should be interpreted in a manner that gives effect to the intention of the parties. *See Hanover Ins. Co. v. Smith*, 538 N.E.2d 710, 712 (Ill. App. 1989), *aff'd*, 561 N.E.2d 14 (1990). In order to discern the intent of the parties,

a court will look to the language in the contract. *See United States Fid. & Guar. Co. v. Klein Corp.*, 558 N.E.2d 1047, 1049 (Ill. App. 1990). The language is to be given its plain and ordinary meaning unless it is ambiguous. *See id.*

The terms of the Indemnity Agreement are clear and unambiguous. Pursuant to the paragraph INDEMNITY SECOND, Defendants agreed to "exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur. . . ." (Pl.'s LR Ex. H, INDEMNITY SECOND.) Consistent with the paragraph TAKEOVER SIXTH of the Indemnity Agreement, United Fire was authorized to "take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same. . . ." (*Id.* at TAKEOVER SIXTH.)

Upon BBA's default of the improvement and construction contracts, United Fire was exposed to numerous and costly claims and lawsuits, which BBA resolved by procuring a completion contractor to finish the remaining work and by disbursing funds to satisfy the payment bond claims and lawsuits filed by subcontractors, suppliers and laborers for material and labor supplied on the various projects. In satisfying its payment and performance bond obligations following BBA's default on each of the seven bonded projects, United Fire has sustained losses and incurred expenses, totaling $5,980,796.19. (Pl's LR State. ¶ 52; Watters Aff. ¶36; Reply at 3; Suppl. Watters Aff. ¶ 1.) Defendants were obligated to "promptly, upon demand pay to the Surety all losses, and expenses so incurred." (Pl.'s LR Ex. H, TAKEOVER SIXTH.) United Fire is entitled to the reimbursement of

11

all losses including attorneys fees, costs, expenses and "any and all disbursements made by it in good faith" incurred as a result of having executed bonds for BBA and as a result of BBA's default on each of the bonded projects. (Pl.'s LR Ex. H, INDEMNITY SECOND.)

Furthermore, the paragraph INDEMNITY SECOND of the Indemnity Agreement provides that vouchers or other evidence of any such payments made by the Surety "shall be prima facie evidence of the fact and amount of the liability to the Surety." As evidence of its costs and expenses, United Fire submitted the affidavit of Steven Watters, a Surety and Fidelity Claims Representative for United Fire, responsible for all performance and payment bond claims against United Fire involving BBA. (Watters Aff. ¶ 1.) In his affidavit, Mr. Watters testified to BBA's default and the resulting termination of the seven construction contracts involving IDOT, the payment and performance bond claims and lawsuits served upon United Fire in connection with the underlying construction projects, and the amounts United Fire has expended in discharging the claims and lawsuits and in enforcing the Indemnity Agreement. (*Id.*)

In addition, United Fire submitted internal claim files and payment summaries, kept in the ordinary course of business, that reflect the losses United Fire has sustained in satisfying its obligations under the surety bonds. (Watters Aff. ¶ 37; Pl.'s LR Ex. J.)

Defendants did not provide any counteraffidavits, or other evidence, to rebut United Fire's prima facie evidence of liability. Accordingly, the extent of United Fire's damages is ascertainable from its Motion. *See U.S. Fidelity*, 558 N.E.2d at 1052. Based on the record and the undisputed facts as presented by United Fire, there are no genuine issues as to any material fact, and summary judgment is proper as a matter of law.

## CONCLUSION

For the foregoing reasons, United Fire's Motion for Summary Judgment is GRANTED. Judgment is entered in favor of United Fire and against Defendants Bartlett Bituminous Asphalt, LLC , Peter T. Console, Anthony P. Console, Donato P. Console, Nicole A. Console, and Rosanna Console, jointly and severally, in the amount of $5,980,796.19. Costs are to be taxed in favor of United Fire and against Defendants.

**IT IS SO ORDERED.**

_____
**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED: February 12, 2008**